IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| GENEVA L. WATKINS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 5:14-CV-107 (MTT) |
| | ) |
| CAPITAL CITY BANK and L.P. KEEN INSURANCE AGENCY, INC., | ) |
| | ) |
| Defendants. | ) |

**ORDER**

Defendant Capital City Bank, as successor in interest to Farmers and Merchants Bank, ("the Bank") has moved for summary judgment and sanctions in this renewal action.[1] (Docs. 68, 70). For the reasons stated below, the motion for summary judgment is **GRANTED**. The Court defers ruling on the motion for sanctions until after the hearing set for **February 11, 2016**.

**I.   BACKGROUND**[2]

This lawsuit is one of a long line of suits[3] filed by members of the Watkins family (Plaintiff Geneva Watkins, her husband Robert Watkins, and their daughter Samantha

---

[1] Pursuant to Georgia law, "[w]hen any case has been commenced in either a state or federal court within the applicable statute of limitations and the plaintiff discontinues or dismisses the same, it may be recommenced in a court of this state or in a federal court either within the original applicable period of limitations or within six months after the discontinuance or dismissal, whichever is later." O.C.G.A. § 9-2-61(a).

[2] The Response to Defendant's Statement of Material Facts (Doc. 72-1) does not comply with Local Rule 56: "Response shall be made to each of the movant's numbered material facts. All material facts contained in the movant's statement which are not specifically controverted by specific citation to particular parts of materials in the record shall be deemed to have been admitted, unless otherwise inappropriate." M.D. Ga. R. 56. Rather than responding to each numbered paragraph as directed by the rule, Plaintiff Geneva Watkins has responded to Statements 1-38 together and Statements 39-40 together in the form of a supplemental brief. This is insufficient under Local Rule 56. Regardless, the Court has already ruled on this issue; the facts are taken from the Bank's Requests for Admission, which have been deemed admitted. (Docs. 55, 65).

Watkins) and two corporations they own (Doge, Inc. and Matthews, Wilson & Matthews, Inc.[4]).  In its current incarnation, this suit is brought by Geneva alone.  Like other Watkins family lawsuits, the case centers around fraud allegations involving force-placed insurance on property that was used as collateral for loans to the Watkins family by the Bank.  (Docs. 47 ¶¶ 13-16, 18, 20, 24-25; 55, ¶¶ 6-10; 55-1 at 4).

The Watkins family has been obtaining loans from the Bank since the 1970s to finance a variety of business operations, which are owned by various members of the Watkins family.  (Doc. 55-15 at 4).  The Watkins family used various properties as collateral or cross-collateral for their loans and other transactions.  (*Id.* at 4-5).  In these transactions, the borrower had to maintain insurance on the collateral property.  (*Id.* at 5).  If the borrower failed to obtain insurance or allowed it to expire, the Bank would "force place" insurance on the collateral property to protect its security interest.  (*Id.* at 5).  Because force-placed policies protect the lender's interest, not the borrower's, the lender is the named insured on the policy.  (*Id.* at 5).  When it became necessary to

---

[3] As far as the Court can tell, the prior lawsuits include: *Doge, Inc. v. Farmers & Merchants Bank, et al.*, CV-2004-0654 (Sup. Ct. of Columbia Cty.); *Geneva L. Watkins and Doge, Inc. v. Farmers & Merchants Bank, et al.*, CV-06C-10783-4 (State Ct. of Gwinnett Cty.); *Samantha D. Watkins v. Farmers & Merchants Bank, et al.*, CV-08-49311 (Sup. Ct. of Bibb Cty.); *Matthews, Wilson & Matthews, Inc. v. Farmers & Merchants Bank, et al.*, CV-08-49310 (Sup. Ct. of Bibb Cty.); *Doge, Inc. v. Capital City Bank as successor in interest to Farmers & Merchants Bank*, CV-09-51378 (Sup. Ct. of Bibb Cty.); *Doge, Inc. v. Farmers & Merchants Bank, et al.*, CV-2004-12445 (Sup. Ct. of Laurens Cty.); *In re: Matthews, Wilson & Matthews, Inc.*, No. 03-13298 (Bankr. S.D. Ga.), *aff'd*, *Matthews, Wilson & Matthews, Inc. v. Peoples Cmty. Bank of S.C.*, 1:05-CV-182 (S.D. Ga.), *aff'd*, No. 06-16054 (11th Cir. 2007) (per curiam); *Geneva L. Watkins v. Farmers & Merchants Bank, Wallace E. Miller, and Capital City Bank*, 3:04-CV-79 (S.D. Ga.), *aff'd*, No. 06-16061 (11th Cir. 2007) (per curiam); *Matthews, Wilson & Matthews, Inc. and Samantha D. Watkins v. Capital City Bank*, 3:06-CV-95 (S.D. Ga.), *aff'd*, No. 07-151615 (11th Cir. 2008) and No. 14-13565-A (11th Cir. 2014); *Robert L. Watkins v. Farmers & Merchants Bank, Capital City Bank as successor in interest to Farmers & Merchants Banks, and L.P. Keen Ins. Agency*, 5:08-CV-259 (M.D. Ga.); *Geneva L. Watkins v. Capital City Bank as successor in interest to Farmers & Merchants Bank, Wallace E. Miller, Samuel Hilbun, Hilbun & Helton, LLC, Edward J. Tarver, Hull Barrett, PC, Roy Cowart, and Craig Cowart*, 3:10-CV-87 (S.D. Ga.); *Geneva L. Watkins v. Capital City Bank as successor in interest to Farmers & Merchants Bank, Wallace E. Miller, Samuel Hilbun, Hilbun & Helton, LLC, Edward J. Tarver, Hull Barrett, PC, and Roy Cowart*, 5:13-CV-212 (D. Vt.); *Matthews, Wilson & Matthews, Inc. and Samantha D. Watkins v. Capital City Bank*, CV-06-1561 (N.D. Ga.); and *Samantha D. Watkins v. Capital City Bank*, 3:14-CV-39 (S.D. Ga.), *aff'd*, No. 14-13938 (11th Cir. 2015).  *See also* (Doc. 55-2 at 18:3-10).

[4] Robert owns Doge, Inc., and Samantha owns Matthews, Wilson & Matthews, Inc.  (Docs. 24-3 at 7, 10; 55-2 at 64:7-8, 154:6).

issue force-placed insurance, the Bank would issue a cashier's check to Defendant L. P. Keen Insurance Agency ("LPK") using funds taken from the borrower's accounts, and LPK would obtain the necessary insurance. (*Id.* at 6).

Geneva contends that the Bank took funds from her accounts ostensibly to pay for force-placed insurance but never purchased the insurance. (Doc. 47 ¶¶ 15-16, 23, 25-26). Specifically, she alleges:

> 15. [The Bank] led Plaintiff to believe that [LPK] had purchased insurance on several properties owned by Plaintiff.
> 16. No such insurance was purchased by Defendants even though Plaintiff was charged premiums for the alleged insurance.
> …
> 20. The Defendants did conspire together illegally to deprive the Plaintiff of money through charging the Plaintiff for insurance in an illegal fashion with no justification.
> …
> 23. Plaintiff has since learned that no policies of insurance were ever purchased for said properties and that [the Bank] and/or McGrath Keen, Jr. were merely pocketing the premiums Plaintiff was being charged.
> …
> 25. [The Bank] purportedly purchased insurance from [LPK] to cover the subject property and charged Plaintiff with the premiums for the same.
> 26. Defendants falsely represented to Plaintiff that force placed insurance would be purchased for Plaintiff's properties, when in reality no such insurance was ever purchased.

(*Id.*).

In 2008, Robert Watkins filed a similar suit in this Court. (Doc. 55-14). In his complaint, he alleged:

> 9.
> At various times when [the plaintiff's] loans were outstanding, [the Bank] represented to plaintiff that defendants had purchased property and casualty insurance to insure plaintiff's property in which [the Bank] held a security interest.

> 10.
>
> At various times [the Bank] deducted from plaintiff's accounts and loan proceeds various amounts purportedly to pay for the premiums for the property and casualty insurance purchased by [the Bank.]
>
> 11.
>
> Even though [the Bank] retained plaintiff's monies under the pretense that said funds would be used for the purchase or property and casualty insurance, [the Bank] never purchased any such insurance.
>
> 12.
>
> [The Bank] never intended to purchase property and casualty insurance with the funds taken from plaintiff's accounts and loan proceeds.
>
> …
>
> 14.
>
> Defendants [LPK] and [the Bank] conspired together and among themselves to deprive plaintiff of his monies by representing that plaintiff's monies were being used to purchase property and casualty insurance through the defendant [LPK].

(Doc. 55-14, ¶¶ 9-12, 14).

Robert did not prevail. (Doc. 55-15). This Court, Judge Royal presiding, found his claim was barred by the four-year statute of limitations for fraud: "Although Plaintiff contends in his affidavit that he did not discover Defendants' alleged fraudulent conduct until it was revealed through discovery in other litigation in September 2004, Plaintiff's prior deposition testimony undeniably establishes that he first suspected Defendants of misappropriating his funds before 1998, more than ten years before filing this action and well outside the applicable statutes of limitations…." (Doc. 55-15 at 11).

In an affidavit given in that case, Robert sheds light on the family's business operations. (Aff., Robert Watkins v. Capital City Bank, No. 5:08-cv-259-CAR (M.D. Ga. 2010), Doc. 29).[5] He states that "[w]e, *as a family*, bought and sold property and businesses on a regular basis" and that he "was the primary *family* representative with the Bank." (Doc. 55-15 at 4; Aff. at 2, Robert Watkins v. Capital City Bank, No.

---

[5] This Court may take judicial notice of court records. *United States v. Rey,* 811 F.2d 1453, 1457 n.5 (11th Cir. 1987).

...

5:08-cv-259-CAR, Doc. 29) (emphasis added). His deposition testimony reveals that "what's mine is [Samantha's] and what [Samantha's] is mine. What my wife's is mine, what mine's is my wife's." (Doc. 55-17 at 30:7-9). He refers to "the Watkins entirety" a number of times in another deposition, as well. (Doc. 55-20 at 77:19, 109:3, 147:7-8, 171:9, 17-18, 207:11, 228:25, 249:8).

In this case, Geneva has also admitted that members of the Watkins family and their corporations are "intermingled" people and entities. (Docs. 55, ¶ 23; 55-2 at 63:19-20, 64:6-7, 10-11; 65). Robert handled business matters for them, including insurance, even when transactions were in Geneva's name, and she deferred to him in those matters. (Docs. 55, ¶¶ 19, 24, 25; 55-2 at 34: 8-11, 35:7-9, 38:4-5, 39:24-25, 40:1-14, 76:13-16, 77:15-23, 79:14-17, 80:13-15, 83:15-19, 84:17-18, 79:19-24, 99:24-25, 103:11-13, 16-18, 106:8-9, 128:2-8, 131:6-7, 134:1-2, 152:8-10, 154:14-15, 156:1-10, 161:1-2, 163:13-14, 169:4-7, 173:19-21, 174:18-19, 178:17-18, 179:13-14, 180:10-12; 65). Throughout her deposition, when faced with a question about their finances or business matters, including insurance, she replied, "Ask Robert Watkins." (Doc. 55-2 at 13:5-6; 34:8-11; 39:24; 40:4; 72:4-5; 76:13-16; 77:7-8, 18-21, 23; 78:7; 83:18-19; 84:1; 98:21; 100:13-14; 105:25-106:1, 6-8; 125:24-25; 127:19-20; 130:25-131:2; 137:3-4; 147:3; 148:18-19; 152:20-21; 155:17; 156:5, 9-10; 160:11; 163:12-13; 166:6; 167:7; 168:16-17; 170:1; 172:7; 173:4; 174:15; 179:10, 13-14; 180:21). She also attempted to have Robert represent her in this case at a status conference in January 2015 by filing a power of attorney. (Docs. 12; 67 at 5:2-22). When the Court denied this request, she asked to call Robert as a witness "since he dealt with the business aspect of the business of ours." (Doc. 67 at 7:5-6). She also asked to confer with Robert when the Court asked her what damages she was seeking. (Doc. 67 at 8:23-9:1). She has admitted that she does not have independent

knowledge of what happened with the insurance on the property that was collateral for their loans.  (Docs. 55 ¶ 21; 65).   She has also admitted that she was "aware of the allegedly fraudulent 'force-placed' insurance premiums by 1998 or at the very latest by July 20, 2000."  (Docs. 55, ¶ 49; 65).

This suit was originally filed in Gwinnett County State Court in 2006 by both Geneva and Doge, Inc.[6]  (Doc. 55-1 at 3-7).[7]  On August 4, 2008, the state-court judge denied summary judgment to the Bank and LPK on the force-placed insurance claim.  (Doc. 22-2 at 2-4).  Not long before that, Robert filed his case in this Court.  (Doc. 55-14).  Doge also filed another suit against the Bank in the Bibb County Superior Court in August 2009.  (Doc. 55-22).  Because the two state-court cases involved "the same or similar issues," the Bank moved to consolidate the two cases.  (Doc. 24-3 at 1, 3).  Instead, the Gwinnett County case was stayed pending the resolution of the Bibb County case and the federal case.  (Docs. 24-3 at 2, 4; 67 at 13:14-22).  After this Court ruled that Robert's claim was barred by the statute of limitations and Bibb County Superior Court ruled that Doge's claim was barred for the same reason, the Bank moved to lift the stay and renewed its motion for summary judgment.  (Docs. 24-3; 55-15; 55-23).

Geneva voluntarily dismissed the Gwinnett County suit on the eve of a hearing on the renewed motion for summary judgment.  (Docs. 22-2 at 6; 67 at 12:5-9, 15:4-7).  She re-filed in federal court on March 10, 2014.[8]  (Doc. 1).  She has amended her

---

[6] At some point, the Gwinnett County State Court granted summary judgment against Doge.  (Doc. 67 at 13:7-8).

[7] At the status conference, the Court asked Geneva why she renewed the case without Doge as a plaintiff, and, consistent with her practice of deferring to Robert on matters of family business, Geneva responded, "I don't know.  My husband would know."  (Doc. 67 at 7:16-19).

[8] The case was originally renewed in the Southern District of Georgia and was transferred to the Middle District on March 18, 2014.  (Doc. 1).

complaint twice, and only the claim about force-placed insurance remains. (Docs. 5; 13; 47; 67 at 7:23-8:1).

The Bank contends that this claim is barred by the statute of limitations, res judicata, and collateral estoppel. (Doc. 68-1).

## II. MOTION FOR SUMMARY JUDGMENT

### A. Summary Judgment Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is not genuine unless, based on the evidence presented, "'a reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant may support its assertion that a fact is undisputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

The burden then shifts to the non-moving party, who must rebut the movant's showing "by producing … relevant and admissible evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The non-moving party does not satisfy its burden "if the rebuttal evidence 'is merely colorable, or is not significantly probative' of a disputed fact." *Id.* (quoting *Anderson*, 477 U.S. at 249-50). Further, where a party fails to address another party's assertion of fact as required by Fed. R.

Civ. P. 56(c), the Court may consider the fact undisputed for purposes of the motion. Fed. R. Civ. P. 56(e)(2). However, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. … The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

### B. Statute of Limitations

The Bank contends that this suit is barred by the statute of limitations, just as Robert's case was. The statute of limitations for fraud is four years in Georgia. O.C.G.A. § 9-3-31. It begins to run when a plaintiff discovers or should have discovered through the exercise of reasonable diligence that she has been injured. *See* O.C.G.A. § 9-3-96; *see also Shipman v. Horizon Corp.*, 245 Ga. 808, 808-09 (1980) ("[W]here the actual fraud is the gravamen of the action … the statute of limitations is tolled until the fraud is discovered or by reasonable diligence should have been discovered."); *Brooks v. Freeport Kaolin Co.*, 253 Ga. 678, 679-80 (1985) (holding that a plaintiff's claim was barred by the statute of limitations when the fraud should have been discovered through reasonable diligence earlier than within four years of filing the suit).

The Bank contends Geneva's claim about force-placed insurance is barred by the statute of limitations because she knew about the alleged fraud by 2000 at the latest, and she did not file suit until 2006. (Doc. 68-1 at 6). Geneva maintains that, while she may have known that the Bank could force-place insurance on her property, she did not know that the insurance was not being obtained until 2004. (Doc. 72 at 8). She cites to a finding of fact in the Gwinnett County case that she did not know of any fraud until 2004, asserting that this finding is the law of the case. (Docs. 22-2 at 2-4; 72 at 7). The Bank points out that after the Gwinnett County judge issued that order, it

obtained evidence that Geneva knew about the alleged fraud by 2000 and renewed its motion for summary judgment on this issue. (Docs. 24-3; 75 at 4).

The prior ruling in the Gwinnett County case is not, as Geneva argues, the law of the case. While she cites no authority to support her assertion, she seems to be relying on Eleventh Circuit cases holding that the resolution of "an issue decided at one stage of a case is binding at later stages of the same case." *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 578 F.3d 1283, 1288-89 (11th Cir. 2009) (quoting *United States v. Escobar-Urrego*, 110 F.3d 1556, 1560 (11th Cir. 1997)). However, it is well-settled that "law of the case applies only where there has been a final judgment." *Id.* (internal quotation marks and citation omitted). The ruling upon which Geneva relies is a *denial* of a motion for summary judgment on this issue. This is not a final judgment. Moreover, as Geneva concedes, new evidence in the form of requests for admission has been introduced since the ruling in the Gwinnett County case.[9] (Docs. 55; 65; 72 at 2). The Court may consider a motion for summary judgment based on this new evidence. *Cf. Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1237 n.1 (11th Cir. 2001) (noting that law of the case does not require a judge to adhere to another judge's prior ruling in a case when the second judge bases his order on a different record); *United States v. Horton*, 622 F.2d 144, 148 (5th Cir. 1980)[10] ("While the ruling on the motion for partial summary judgment is the law of the case on the issues decided, this ruling is not immutable and has no res judicata effect. The doctrine of law of the case is

---

[9] Just as new evidence was presented to the Gwinnett County State Court when the defendants renewed their motion for summary judgment, Geneva avoided a ruling then by dismissing her lawsuit. (Docs. 1 at 79; 23-3).

[10] The Eleventh Circuit has adopted as binding precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

not inflexible; the earlier ruling, which is not res judicata, may be reconsidered in the interest of judicial economy.") (per curiam) (citation omitted).

Geneva has admitted she was "aware of the allegedly fraudulent 'force-placed' insurance premiums by 1998 or at the very … latest July 20, 2000" and that she has "no evidence to demonstrate that [she was] only made aware of these allegedly fraudulent 'force-placed' insurance premiums after July 20, 2000." (Docs. 55, ¶¶ 49, 50; 65). Thus, the statute of limitations ran, at the latest, on July 20, 2004. Geneva did not file her suit in Gwinnett County until 2006. (Doc. 55-1 at 2). This is well outside the statute of limitations.

### C. Res Judicata

The Bank also contends that this suit is barred by res judicata. Res judicata bars relitigation of matters decided in prior court proceedings. "The preclusive effect of a federal-court judgment is determined by federal common law." *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008). Res judicata forbids "a subsequent action if: (1) the prior decision was rendered by a court of competent jurisdiction; (2) there was a final judgment on the merits; (3) the parties were identical in both suits; and (4) the prior and present causes of action are the same." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1187 (11th Cir. 2003) (quoting *Jang v. United Techs. Corp.*, 206 F.3d 1147, 1149 (11th Cir. 2000)). This includes not only claims raised in the prior action but also claims that could have been raised previously. *Davila*, 326 F.3d at 1183 (citing *Trustmark Ins. Co. v. ESLU, Inc.*, 299 F.3d 1265, 1271 (11th Cir. 2002)).

Geneva does not dispute the first, second, or fourth elements of the res judicata test. Rather, she claims that there is no identity of parties because she "was not a party, nor did she have an opportunity to litigate, in any of the prior cases that dealt with insurance fraud." (Doc. 72 at 6-7). The Bank contends, however, that the members of

the Watkins family and their corporations are in privity with one another, which satisfies this element.  (Doc. 68-1 at 12).

"Under the third element of *res judicata,* 'a judgment will only bar subsequent claims involving the same parties or their privies.'"  *Davis v. Davis*, 551 F. App'x 991, 995 (11th Cir. 2014) (quoting *Citibank N.A. v. Data Lease Fin. Corp*, 904 F.2d 1498, 1502 (11th Cir. 1990)).  "As a general rule, 'one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process.'"  *Griswold v. Cty of Hillsborough*, 598 F.3d 1289, 1292 (11th Cir. 2010) (quoting *Taylor*, 553 U.S. at 893).  However,

> [a] court may apply nonparty preclusion if: (1) the nonparty agreed to be bound by the litigation of others; (2) a substantive legal relationship existed between the person to be bound and a party to the judgment; (3) the nonparty was adequately represented by someone who was a party to the suit; (4) the nonparty assumed control over the litigation in which the judgment was issued; (5) a party attempted to relitigate issues through a proxy; or (6) a statutory scheme foreclosed successive litigation by nonlitigants.

*Id.* at 1292.  These exceptions establish privity.  *Id.*

The undisputed facts establish that Geneva is in privity with Robert, who litigated the Watkins family's force-placed insurance claim in his case in this Court.  Indeed, the Watkins family's force-placed insurance claim has been litigated again and again, and always unsuccessfully.  Geneva's failure to dispute res judicata's fourth element–that Robert's case and her case involve the same claim–helps illustrate her privity with Robert.  Although the particular family member or corporation asserting the force-placed insurance claim has changed from suit to suit, the claim itself has remained constant.[11]

---

[11] Geneva confirmed this in an amendment to her complaint filed on January 8, 2016.  (Doc. 85).  That amendment lists various properties that Watkins family members or their corporations owned and alleges that Geneva is entitled to recover force-placed insurance premiums collected on those properties.  (Doc. 85).  In one of his cases, Robert testified that insurance premiums were wrongfully collected on Wisdom

-11-

Clearly, it seems, members of the Watkins family believe they are in privity. Otherwise, how could they pass their force-placed insurance claim back and forth?

Apart from that, Geneva has admitted that she, Robert, Samantha, and their two companies are "intermingled." (Docs. 55, ¶ 23; 55-2 at 63:19-20, 64:10-11; 65). She testified to the same effect several times in her deposition: "I know it says it's my money, but we are a family" (Doc. 55-2 at 79:14-15); she refers to her "family's money" (*Id.* at 185:19); "when I say 'family' in the transactions here, I mean Robert, Samantha and myself" (*Id.* at 103:11-13); she could not be sure which notes she guaranteed "because it was … the Watkins family" (*Id.* at 85:15-23); she directed the deposing attorney to ask her husband about her personal bankruptcy because "[w]e were a family. … We worked together, my daughter and my husband, we worked together." (*Id.* at 127:23-25, 128:3-4); she wanted a "full accounting of all the transactions on the Watkins" (*Id.* at 162:4-5); and she testified that "what's [Robert's] is mine, and what's

---

Villa, the Watkins family's house, Garden Village, and Pebble Creek. (Aff. at 4-6, 7, 8-9, 10, 11, 12, 13, 14, Robert Watkins v. Capital City Bank, No. 5:08-cv-259-CAR, Doc. 29). These are the same properties that Geneva lists in her amendment. (Doc. 85). Moreover, a comparison of the payments in Geneva's amendment with the exhibits to Robert's affidavit shows that many of the disputed payments are the same payments that were at issue in Robert's case. (Doc. 85; Exs. at 4, 6, 20-23, 49, 63, 67, 89, 92-93, Robert Watkins v. Capital City Bank, No. 5:08-cv-259-CAR, Doc. 29-1).

Matthews, Wilson & Matthews, Inc. also appears to have filed a case in the Southern District of Georgia and two cases in Bibb County Superior Court alleging the misappropriation of funds for the purchase of force-placed insurance. (Doc. 77 at 32, 33, 36). While these complaints are not in evidence, Judge Self of Bibb County Superior Court describes them in his order granting the Bank's motion to dismiss and LPK's motion for summary judgment, noting that "[a]stoundingly, the current suit marks the ***third*** time that Plaintiff has made these claims against [the Bank] and the ***second*** time that Plaintiff has pursued these claims against [LPK]." (*Id.* at 36). Robert also discusses "fraudulent insurance" in his 2006 deposition for a case by Matthews, Wilson & Matthews against the Bank in the Southern District of Georgia, further suggesting that this claim was an issue in that case. (Docs. 55-16 at 12:4, 14:1, 22:2, 24:8, 62:3, 8, 63:21, 82:5; 55-17 at 21:13, 22:17, 70:11, 15, 110:12, 122:8. These page numbers reference the CM/ECF page numbers rather than the deposition page numbers).

Finally, the Doge case in Bibb County Superior Court asserts a claim for conversion based on the misappropriation of funds. (Doc. 55-22, ¶¶ 30-35). In his order granting summary judgment, which adopted Judge Royal's findings of fact, the Bibb County judge noted that "[i]t is clear that the Plaintiff is yet again attempting to relitigate issues that are stale and should have been brought ten years ago." (Doc. 55-23 at 2, 5). The court found that Doge had failed to exercise reasonable care in discovering the alleged fraud because the alleged misapplication of funds could have been discovered prior to 2005 and was suspected as early as 1998. (*Id.* at 7, 9).

mine is his"[12] (*Id.* at 163:6-7).  This testimony supports the conclusion that Geneva did not distinguish her money or her affairs from her family's.[13]  She has also admitted that Scott Moore, the expert she hired, "did not differentiate between what was attributable to [her], Robert L. Watkins, Sr., Samantha Watkins, Doge, Inc., and/or Matthews Wilson Matthews, Inc. with regard to 'force-placed' insurance."  (Doc. 55, ¶ 26).

The affidavit Robert submitted in his case demonstrates that he felt the same way.  Robert swore he was the "primary *family* representative with the Bank" for the Watkins family's business dealings there.  (Aff. at 2, Robert Watkins v. Capital City Bank, No. 5:08-cv-259-CAR, Doc. 29) (emphasis added).  He asserts that no one from the Bank ever contacted him "about paying for force-placed insurance on any property whether owned by … Geneva, my daughter, Samantha[,] or Doge, Inc., or by Matthews, [Wilson] and Matthews, Inc.  If such a request had ever been made by a bank loan officer, *I* would have been the individual *for the Watkins[] family* that would have been contacted."  (Aff. at 8, Robert Watkins v. Capital City Bank, No. 5:08-cv-259-CAR, Doc. 29) (emphasis added).

Even when Geneva was the sole buyer or seller of land, Robert attended the closings and took charge of the money.  (Aff. at 3, 10, Robert Watkins v. Capital City Bank, No. 5:08-cv-259-CAR, Doc. 29).  For instance, when Geneva sold property at 2822 Knob Hill Farm Road, Robert states that *he* gave the check to their banker and asked him to deposit it in the joint checking account he had with Geneva.  (Aff. at 3,

---

[12] Robert testified to the same.  (Doc. 55-19 at 46:11-12).

[13] In her initial complaint in this Court, the Court also notes that Geneva used documents from other cases the Watkins family and their corporations have filed as exhibits to support her allegations.  For instance, Exhibit A is an affidavit given by McGrath Keen Jr. in Robert Watkins's case in this Court (Doc. 1 at 12-17); Exhibits D and E are a series of letters, many of which reference the "Watkins family," and affidavits regarding Matthews, Wilson & Matthews, Inc. for use in a case in the Southern District of Georgia (Doc. 1 at 30-43, 45-63); and Exhibit G is a letter regarding mediation for a Matthews, Wilson & Matthews, Inc. and Samantha Watkins case on appeal to the Eleventh Circuit (Doc. 1 at 69-74).  Geneva's use of these documents further supports the conclusion that there is no meaningful difference between the members of the Watkins family and their corporations.

Robert Watkins v. Capital City Bank, No. 5:08-cv-259-CAR, Doc. 29).  And when Geneva purchased Wisdom Villa, Robert states that the Bank sent instructions "to Robert and Geneva L. Watkins regarding the funds they needed to bring at the closing." (Aff. at 10, Robert Watkins v. Capital City Bank, No. 5:08-cv-259-CAR, Doc. 29). However, inspection of the letter itself shows that Geneva is never even mentioned, even though she is the buyer; the letter only says what *Robert* will bring.  (Exs. at 48, Robert Watkins v. Capital City Bank, No. 5:08-cv-259-CAR (M.D. Ga. 2010), Doc. 29-1).

It is clear that Geneva does not have any independent knowledge about the family's business affairs or finances, including anything having to do with insurance. (Doc. 55, ¶¶ 19-21, 24-25).  When asked about insurance in her deposition, she repeatedly responded that the deposing attorney should "ask Robert Watkins" that question.  (Doc. 55-2 at 34:5-11; 39:24-25; 40:1-4; 137:3-4; 156:1-10; 168:8-17; 169:24-170:1; 172:1-7; 173:4, 17-21; 180:1-15, 21).  When asked about force-placed insurance, she responded that "[t]he term rings a bell, but exactly what that means, I don't know," and "I don't understand insurance."  (Doc. 55-2 at 34:21-25; 39:3-4; 138:1-2).  Instead, she said to "[a]sk Robert Watkins about that, because Robert Watkins, Senior is the one who handled all our finances.  That was his job to do," and "Robert always handled the financial things, as far as insurance was concerned, with the buildings.  He did all that.  All I did was take care of patients in my assisted living home."   (Doc. 55-2 at 34:8-10; 35: 7-11).  She did not employ him to handle the finances, including insurance, for the companies she owned; it was simply his role in the family business.  (Docs. 55, ¶ 24; 55-2 at 1-6).  She told the deposing attorney to "ask Robert" so often that, at one point, he asked her if she had "any personal knowledge of the events that led to this lawsuit."  (Doc. 55-2 at 161:4-5).

Similarly, before the January 2015 status conference in this case, Geneva filed a power of attorney for Robert to represent her, but the Court told her that the document did not authorize him to speak for her in court. (Docs. 12; 67 at 5:2-22). She then asked to call Robert as a witness "since he dealt with the business aspect of the business of ours." (Doc. 67 at 7:5-6). When the Court asked her why the suit had been re-filed without Doge as a plaintiff and what damages she was seeking, she asked to confer with Robert for the answers to those questions. (Doc. 67 at 7:16-19, 8:23-9:1).

If it is clear that Geneva does not know anything about the Watkins family's insurance, it is equally clear that Robert has a great deal to say about the issue. He mentions "fraudulent insurance" numerous times in his 2006 deposition for a case by Matthews, Wilson & Matthews against the Bank in the Southern District of Georgia. (Docs. 55-16 at 12:4, 14:1, 22:2, 23:20-21, 24:8, 62:3, 8, 63:21, 82:5; 55-17 at 21:13, 22:17, 70:11, 15; 110:12, 122:8.).[14] He was also deposed while this case was still pending in Gwinnett County, and, unlike Geneva, he readily answered questions about insurance, including the insurance agencies he dealt with and whether he was current on his payments for policies. (Docs. 55-19 at 23:6-8; 55-20 at 145:16-18; 147:1-23; 149:9-151:25; 181:15-182:7; 186:17-23; 189:2-11; 189:18-190:10; 190:21-191:18; 192:7-194:4; 228:17-229:22; 230:2-9; 235:22-236:6; 236:20-21). It is evident that although the name of the plaintiff has changed, Robert Watkins is the motivating force behind this litigation.

Based on the foregoing, there is sufficient evidence that privity exists between Geneva and Robert Watkins because she was adequately represented in the prior suit. Neither she nor Robert makes a meaningful distinction between their finances, business affairs, or their interests therein. This is sufficient to create privity. *See Baloco v.*

---

[14] These page numbers reference the CM/ECF page numbers rather than the deposition page numbers.

*Drummond Co., Inc.*, 767 F.3d 1229, 1249 (11th Cir. 2014) ("Because there is a close connection between the concept of privity and the notion of identity of interests, the existence of the same rights and interests in property has been recognized as being 'specific enough' to create privity for purposes of claim preclusion."). As the other elements of res judicata are not disputed, this claim is barred.[15]

Georgia law demands the same result because of the judgments entered in *Doge, Inc. v. Capital City Bank*, 09-CV-51378; *Matthews, Wilson & Matthews, Inc. v. Farmers & Merchants Bank, Capital City Bank, as successor in interest to Farmers & Merchants Bank, and L.P. Keen Insurance Agency, Inc.*, 08-CV-49310; and *Mathews, Wilson & Mathews, Inc. v. Farmers & Merchants Bank, Capital City Bank, as successor in interest to Farmers & Merchants Bank and L.P. Keen Insurance Agency, Inc.*, 09-CV-51360 in Bibb County Superior Court.[16] (Docs. 55-23, 77 at 29-45).

---

[15] The Bank also contends that the claim is barred by collateral estoppel. "Collateral estoppel, like the related doctrine of res judicata, has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979) (footnote omitted). The elements of collateral estoppel are: "(1) the issue at stake must be identical to the one involved in the prior litigation; (2) the issue must have been actually litigated in the prior suit; (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that action; and (4) the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding." *I.A. Durbin, Inc. v. Jefferson Nat'l Bank*, 793 F.2d 1541, 1549 (11th Cir. 1986). Because the issue of force-placed insurance has been litigated in other cases by the Watkins family and their corporations and there is a finding of privity between Geneva and Robert Watkins, the instant case is also barred on collateral estoppel grounds. *See Baloco*, 767 F.3d at 1251-52 (finding that collateral estoppel barred relitigation of an issue decided on summary judgment in a past case).

[16] Georgia law of res judicata does not substantially differ from federal law: "A judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered until the judgment is reversed or set aside." O.C.G.A. § 9-12-40. "When giving a state-court judgment preclusive effect, we apply the *res judicata* law of the state whose court rendered the judgment." *Johnson v. Girl Scouts of the USA*, 596 F. App'x 797, 798 (11th Cir. 2015) (per curiam). Bibb County cases between Doge and the Bank in 2009 and Matthews, Wilson & Matthews and the Bank in 2009 and 2010 also appear to assert the claim about misappropriation of funds and force-placed insurance. (Docs. 55-22; 55-23; 77 at 29-45).

**III. MOTION FOR SANCTIONS**

The Bank has also moved for sanctions against the Watkins family pursuant to Fed. R. Civ. P. 11. (Doc. 70). When an attorney or *pro se* party files a motion or pleading, he or she certifies to the Court that, to the best of his or her knowledge and after reasonable inquiry,

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and]
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery ….

Fed. R. Civ. P. 11(b)(1)-(3). "The objective standard for testing conduct under Rule 11 is reasonableness under the circumstances and what was reasonable to believe at the time the pleading was submitted." *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998) (internal quotation marks and footnote omitted). There is a two-step inquiry: "(1) whether the party's claims are objectively frivolous; and (2) whether the person who signed the pleadings should have been aware that they were frivolous." *Id.* If there is a violation, the Court may impose sanctions. Fed. R. Civ. P. 11(c)(1).

The Bank asserts that the Watkins family is subject to sanctions because they have filed at least nineteen cases stemming from one foreclosure and have been warned by both Judge Dudley H. Bowen, Jr. in the Southern District of Georgia and this Court that their conduct may warrant sanctions.[17] (Doc. 70 at 1, 2). The Bank contends

---

[17] Judge Bowen issued an order on October 20, 2014 warning the Watkins family and their corporations that "continuing their pursuit of frivolous litigation may result in sanctions, injunction, and/or other appropriate relief." (Doc. 70 at 2 (quoting Order at 4, Samantha Watkins v. Capital City Bank, No. 3:14-CV-39 (S.D. Ga. Oct. 20, 2014), Doc. 21)). This order also contains an addendum noting their "game plan of continuously filing meritless law suits in as many different courthouses as possible for as long as possible" and "their litany of failed and frivolous litigation." (*Id.* (quoting Order at 6, Samantha Watkins v. Capital City Bank, No. 3:14-CV-39, Doc. 21)). This Court also advised Geneva during a status

that the Watkins family and their corporations have engaged in abusive litigation "because their repetitive lawsuits spanning the last decade impair this Court's ability to carry out its duties. There is no need for nineteen (19) lawsuits." (*Id.* at 5-6). Furthermore, these suits "routinely force [the] Bank to interrupt its business affairs to address needless litigation. …Over the…past decade, the [B]ank has expended hundreds of thousands of dollars defending one lawsuit after another." (*Id.* at 6).

Specifically, the Bank points to sanctionable conduct in violation of Fed. R. Civ. P. 11(b)(1)-(3) because (1) the claim about force-placed insurance was presented for an improper purpose as the Watkins family knew about the fraud by 2000 at the latest, and this claim has already been addressed in other courts; (2) the claim was not warranted by existing law because the statute of limitations for fraud as well as the principles of res judicata and collateral estoppel are well-settled; and (3) there is no evidentiary support for the factual contentions presented. (*Id.* at 6-7). As relief, the Bank requests that the Court enter an order enjoining the Watkins family and their corporations from relitigating their claim regarding force-placed insurance, requiring all of their future pleadings to be accompanied by an affidavit attesting that the claims are novel, and directing them to seek leave of the court before filing against the Bank again. (*Id.* at 8). It also requests an award of attorney's fees and costs in the amount of $16,590.82. (*Id.* at 10).

Geneva responds that her claim is not objectively frivolous and thus cannot be the subject of sanctions because she had evidence she believed supported her claim. (Doc. 74 at 1, 2-3). She explains that she "possessed a Judge's order establishing that the statute of limitations did not begin to run until 2004 and an affidavit from a qualified expert that substantiates every claim she made about fraudulent force-placed

---

conference that it would "seriously consider any motion for sanctions" "[i]f – and it's a big if at this point … the Defendants can establish what they have asserted they can establish." (Doc. 67 at 27:17-20).

insurance." (*Id.* at 2-3).  She points out that this is actually the second action filed in this matter because this case was originally filed in 2006.  (*Id.* at 2).  Moreover, she has never been the named plaintiff in a case about force-placed insurance against the Bank.  (*Id.* at 2).

The Court orders the Plaintiff to show cause why she should not be sanctioned. She and counsel will appear before the Court on **February 11, 2016** at **11:00 a.m.**

### IV. CONCLUSION

Based on the foregoing, the Bank's motion for summary judgment is **GRANTED.** (Doc. 68).  Pursuant to Fed. R. Civ. P. 54(b), the Court **DIRECTS** the entry of final judgment as to all of Geneva's claims because there is no reason for delay.  This order is immediately appealable.  The Court defers ruling on the motion for sanctions.  (Doc. 70).

**SO ORDERED,** this 19th day of January, 2016.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT