IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| GENEVA L. WATKINS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 5:14-CV-107 (MTT) |
| ) | |
| CAPITAL CITY BANK and L.P. KEEN ) | |
| INSURANCE AGENCY, INC., ) | |
| ) | |
| Defendants. ) | |
| ) | |

## ORDER

Defendant Capital City Bank ("the Bank") has moved for sanctions pursuant to Fed. R. Civ. P. 11 against Plaintiff Geneva Watkins, seeking an order awarding attorney's fees and enjoining the Watkins family and their corporations from re-litigating their claim regarding force-placed insurance, requiring all of their future pleadings to be accompanied by an affidavit attesting that the claims are novel, and directing them to seek leave of court before filing against the Bank again. (Doc. 70). For the following reasons, the motion is **GRANTED in part**.

### I. BACKGROUND

The facts have been addressed at length in the Court's Order granting summary judgment to the Bank. (Doc. 86). Essentially, Geneva, her husband Robert Watkins, their daughter Samantha Watkins, and two corporations they own, Doge, Inc. and Mathews, Wilson, & Mathews, Inc., have filed a series of lawsuits against the Bank since 2004. Several of these suits include claims about fraudulent force-placed

insurance.[1]  They have not prevailed in any of these cases.  (Docs. 55-15; 55-23; 77 at 29-45).

## Procedural History

Geneva and Doge, Inc. originally filed this suit in Gwinnett State Court in 2006.  (Doc. 55-1 at 3-7).  On August 4, 2008, the state court denied the Bank's motion for summary judgment on the force-placed insurance claim.  (Doc. 22-2 at 2-4).  Not long before that, Robert filed suit against the Bank in this Court, asserting claims involving force-placed insurance.  (Doc. 55-14).  Doge, Inc. raised similar claims in a suit against the Bank filed in Bibb Superior Court in August 2009.  (Doc. 55-22).  Because the two state court cases involved "the same or similar issues," the Gwinnett County case was stayed pending the resolution of the Bibb County case and the federal case.  (Doc. 24-3 at 4).  After this Court, Judge Royal presiding, ruled that Robert's fraudulent force-placed insurance claim was barred by the statute of limitations and Bibb Superior Court ruled that Doge, Inc.'s claim was barred for the same reason, the Bank moved to lift the stay and renewed its motion for summary judgment, citing res judicata.  (Docs. 24-3; 55-15; 55-23).  Geneva voluntarily dismissed the Gwinnett County suit on the eve of a hearing on the renewed motion for summary judgment.  (Docs. 22-2 at 6; 67 at 12:5-9, 15:4-7).  She re-filed in this court on March 10, 2014.  (Doc. 1).

As discussed in this Court's Order granting summary judgment to the Bank, the undisputed facts established that Robert is the driving force behind the Watkins family

---

[1] As far as the Court can tell, the prior lawsuits about force-placed insurance include: *Geneva L. Watkins and Doge, Inc. v. Farmers & Merchants Bank, et al.*, CV-06C-10783-4 (State Ct. of Gwinnett Cty.); *Robert L. Watkins v. Farmers & Merchants Bank, Capital City Bank as successor in interest to Farmers & Merchants Banks, and L.P. Keen Ins. Agency*, 5:08-CV-259 (M.D. Ga.); *Doge, Inc. v. Capital City Bank as successor in interest to Farmers & Merchants Bank*, CV-09-51378 (Sup. Ct. of Bibb Cty.); *Mathews, Wilson & Mathews, Inc. v. Farmers & Merchants Bank, et al.*, CV-08-49310 (Sup. Ct. of Bibb Cty.); *Mathews, Wilson & Mathews, Inc. v. Farmers & Merchants Bank, et al.*, CV-09-51360 (Sup. Ct. of Bibb Cty.).

litigation, regardless of the named plaintiff in these cases. (Doc. 86 at 11 & n.11). At the motion hearing, counsel for Geneva confirmed this, telling the Court, "[Y]ou can't stop Robert. You can't really even control him." (Doc. 99 at 6:7-8). Specifically, with regard to the force-placed insurance claim, it is clear that it is a single claim that has been asserted again and again by different family members or companies. Since the Order granting summary judgment was entered, Robert has filed two pro se motions in this case despite not being a party, one of which admits that the family's force-placed insurance claim has been litigated before. (Docs. 90, 91).

## II.  DISCUSSION

When an attorney or pro se party files a motion or pleading, he or she certifies to the Court that, to the best of his or her knowledge and after reasonable inquiry,

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and]
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery ….

Fed. R. Civ. P. 11(b)(1)-(3). "'Rule 11 applies to pro se plaintiffs, but the court must take into account the plaintiff's pro se status when determining whether the filing was reasonable.'"[2] *Meidinger v. Healthcare Indus. Oligopoly*, 391 F. App'x 777, 778 (11th Cir. 2010) (quoting *Thomas v. Evans,* 880 F.2d 1235, 1240 (11th Cir. 1989)).

---

[2] Geneva was pro se when she renewed her complaint in this Court. (Doc. 1). She had counsel when the motion for sanctions was filed and at the motion hearing, but the Bank is not seeking sanctions against him. (Doc. 99 at 25:15-22). Her attorney has since withdrawn. (Docs. 101, 112). Geneva has filed three pro se motions since the motion hearing. (Docs. 96, 100, 106).

"The objective standard for testing conduct under Rule 11 is reasonableness under the circumstances and what was reasonable to believe at the time the pleading was submitted." *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998) (internal quotation marks and footnote omitted).  There is a two-step inquiry:  "(1) whether the party's claims are objectively frivolous; and (2) whether the person who signed the pleadings should have been aware that they were frivolous."  *Id.*  If there is a violation, the Court may impose sanctions.  Fed. R. Civ. P. 11(c)(1).  The purpose of Rule 11 sanctions is "to deter repetition of the conduct or comparable conduct by others similarly situated."  Fed. R. Civ. P. 11(c)(4).

The Bank argues that the Watkins family and their corporations are subject to sanctions because they have filed at least nineteen cases stemming from one foreclosure and were warned by both Judge Dudley H. Bowen, Jr. in the Southern District of Georgia and this Court that their conduct may warrant sanctions.[3]  (Doc. 70 at 1, 2).  The Bank contends that the "repetitive lawsuits" have impaired this Court's ability to carry out its duties.  (*Id.* at 5-6).  Furthermore, these suits "routinely force [the] Bank to interrupt its business affairs to address needless litigation."  (*Id.* at 6).  The Bank points out that it has spent hundreds of thousands of dollars defending these suits.  (*Id.*).

---

[3] Judge Bowen issued an order on October 20, 2014 warning the Watkins family and their corporations that "continuing their pursuit of frivolous litigation may result in sanctions, injunction, and/or other appropriate relief."  (Doc. 70 at 2 (quoting Order at 4, Samantha Watkins v. Capital City Bank, No. 3:14-CV-39 (S.D. Ga. Oct. 20, 2014), Doc. 21)).  This order also contains an addendum noting their "game plan of continuously filing meritless law suits in as many different courthouses as possible for as long as possible" and "their litany of failed and frivolous litigation."  (*Id.* (quoting Order at 6, Samantha Watkins v. Capital City Bank, No. 3:14-CV-39, Doc. 21)).  This Court also advised Geneva during a status conference that it would "seriously consider any motion for sanctions" "[i]f – and it's a big if at this point … the Defendants can establish what they have asserted they can establish."  (Doc. 67 at 27:17-20).

Specifically, the Bank points to sanctionable conduct in violation of Fed. R. Civ. P. 11(b)(1)-(3) because (1) the force-placed insurance claim was presented for an improper purpose because the Watkins family knew about the alleged fraud by 2000 at the latest and because the claim had already been litigated in other courts; (2) the claim was not warranted by existing law because the statute of limitations for fraud as well as the principles of res judicata and collateral estoppel are well-settled; and (3) there is no evidentiary support for the factual contentions presented. (*Id.* at 6-7). As relief, the Bank requests that the Court enter an order enjoining the Watkins family and their corporations from re-litigating their claim regarding force-placed insurance, requiring all of their future pleadings to be accompanied by an affidavit attesting that the claims are novel, and directing them to seek leave of the court before filing against the Bank again. (*Id.* at 8). It also requests an award of attorney's fees and costs. (*Id.* at 10).

Geneva responds that her claim was not objectively frivolous and thus cannot be the subject of sanctions because she had evidence she believed supported her claim when she renewed her suit in this court. (Docs. 74 at 1, 2-3; 99 at 16:1-4). She explains that she "possessed a Judge's order establishing that the statute of limitations did not begin to run until 2004 and an affidavit from a qualified expert that substantiates every claim she made about fraudulent force-placed insurance." (*Id.* at 2-3). She argues that this case was filed in 2006 and thus is just the second filed by the family. (*Id.* at 2). Finally, she says she has never been the named plaintiff in a case about force-placed insurance against the Bank. (*Id.* at 2).

Geneva's arguments fail to acknowledge the undisputed facts in this case. When she refiled this action in this Court, the force-placed insurance claim had been at least

twice litigated and resolved adversely to the Watkins family.[4]  Thus, even though the state court had denied the Bank's first motion for summary judgment and even if Geneva had an expert supporting the merits of her claim, the fact remains that her claim was barred when filed.  The fact that she was not the named plaintiff in the prior adjudications, for the reasons discussed in the Court's Order granting summary judgment to the Bank, is immaterial.  Nor is the Court persuaded by Geneva's argument that she did not know the suit was frivolous because "the narrative that she understands is a narrative that is filtered through Robert" and that she is just an "unwitting passenger" who does what Robert tells her to do.  (Doc. 99 at 6:10-11, 13:25, 14:6-7).  That she allows herself to be influenced by Robert does not absolve her of her Rule 11 responsibilities.  In any event, the Bank's Rule 11 notice informed her that her claims had been previously litigated and thus were barred by res judicata and collateral estoppel.  (Doc. 70-1 at 5-6).  Finally, the family's broader litigation history supports sanctions.  All their claims against the Bank have been rejected again and again yet they continue to file cases litigating the same issues.  Accordingly, sanctions for the violation of Rule 11 are appropriate.

---

[4] Neither now nor in response to the Bank's motion for summary judgment did Geneva argue that res judicata and collateral estoppel were inapplicable because this case was a renewal of her Gwinnett County case which was filed prior to the other cases litigating the forced-placed insurance claim.  This is understandable because that argument would be without merit.  A second-filed action that goes to judgment can bar a first-filed action that has not yet gone to judgment.  *See Princess Lida of Thurn and Taxis v. Thompson*, 305 U.S. 456, 466 (1939) ("[I]t is settled that where the judgment sought is strictly in personam, both the state court and the federal court, having concurrent jurisdiction, may proceed with the litigation at least until judgment is obtained in one of them which may be set up as res judicata in the other."); *Lawrence v. Household Bank (SB), N.A.*, 505 F. Supp. 2d 1279, 1284 (M.D. Ala. 2007) ("[I]f … the second-filed case proceeds to judgment first, the first-filed rule must yield to the principles of res judicata …." (citing *Chicago, R.I. & P. Ry. Co. v. Schendel*, 270 U.S. 611, 615-16 (1926) and *A.F. Pylant, Inc. v. Republic Creosoting Co.*, 285 F.2d 840 (5th Cir. 1961)); *Mut. Serv. Cas. Ins. Co. v. Frit Indus., Inc.*, 805 F. Supp. 919, 922 (M.D. Ala. 1992) ("[O]nce one court reaches a judgment in a matter, that judgment may be pled as res judicata in the other.").  Indeed, it seems clear that Geneva dismissed the Gwinnett County action to avoid the res judicata effect of the judgments adversely resolving the forced-placed insurance claim.

**A.    Attorney's fees**

To determine a reasonable amount of attorney's fees, "the number of hours reasonably expended on the litigation [is] multiplied by a reasonable hourly rate.... The product of these two figures is the lodestar and there is a strong presumption that the lodestar is the reasonable sum the attorneys deserve." *Bivens v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008) (internal quotation marks and citation omitted). "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1396 (11th Cir. 1988). The court may also make an award based on its own experience. *Id.* at 1303.

To support the request for attorney's fees and expenses, the Bank submitted an affidavit with supporting documents demonstrating that counsel spent 134.6 hours on this matter, resulting in attorney's fees of $19,206.50.[5] (Docs. 70-1, ¶ 4; 92-1, ¶ 5; 92-2). An additional $281.82 in expenses also accrued. (Doc. 70-1, ¶ 4). Geneva has not contested the amount of fees and expenses or the number of hours spent on this case.

After careful review and based on the Court's own experience, the Court is satisfied that counsel expended a reasonable number of hours at hourly rates that are reasonable for this type of litigation in this legal community. Accordingly, the Bank is entitled to attorney's fees and expenses totaling $19,488.32.

---

[5] The exhibit showing the breakdown of billable hours shows a total "value" of $19,500.50. (Doc. 92-2 at 16). However, two of the line items are listed as "No Charge," so the Court has deducted $120 from the total to account for them. (*Id.* at 12-13). The Court has also deducted $174 for four line items relating to work done regarding settlement demands received from Ms. Deborah Wilson and Charles and Carroll Campbell. (*Id.* at 10-11). It is unclear how these line items relate to this litigation.

### B. Injunction

The Bank has also requested as a non-monetary sanction an injunction that would require any member of the Watkins family or their corporations to seek leave of court before filing another suit against the Bank, enjoining the Watkins family and their corporations from re-litigating their claim regarding force-placed insurance, and requiring all of their future pleadings to be accompanied by an affidavit attesting that the claims are novel. (Doc. 70 at 8). Federal district courts are empowered to enter an injunction restricting a party's ability to file suits pursuant to the All Writs Act, 28 U.S.C. § 1651, which authorizes federal district courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions." 28 U.S.C. § 1651(a). "The court's power to protect its jurisdiction includes the power to enjoin a dissatisfied party bent on re-litigating claims that were (or could have been) previously litigated before the court from filing in both judicial and nonjudicial forums, as long as the injunction does not completely foreclose a litigant from any access to the courts." *Riccard v. Prudential Ins. Co.,* 307 F.3d 1277, 1295 n.15 (11th Cir. 2002); *see also Miller v. Donald,* 541 F.3d 1091, 1096 (11th Cir. 2008) ("[T]he district courts are authorized by the All Writs Act, 28 U.S.C. § 1651(a), to restrict access to vexatious and abusive litigants."). For example, the Eleventh Circuit has upheld an injunction requiring a frequent litigant to obtain leave of court before being allowed to file any new actions against his former employer, *Riccard,* 307 F.3d at 1295; an injunction directing the clerk to mark any papers submitted by a frequent litigant as "received" and requiring the approval of a judge before filing them, *Copeland v. Green,* 949 F.2d 390, 391 (11th Cir. 1991) (per curiam);

and an injunction requiring prefiling screening by a judge of all pleadings submitted by a frequent litigant, *Cofield v. Ala. Pub. Serv. Comm'n,* 936 F.2d 512, 518 (11th Cir. 1991).

An injunction issued by a federal court may also bar a party from re-litigating a claim in state court.  *See, e.g.*, *Riccard*, 307 F.3d at 1295 & n.15 (upholding an injunction issued pursuant to the All Writs Act prohibiting the re-litigation of a claim in both federal and state court without leave of court); *see also Newby v. Enron Corp.,* 302 F.3d 295, 301 (5th Cir. 2002) ("[I]t is widely accepted that federal courts possess power under the All Writs Act to issue narrowly tailored orders enjoining repeatedly vexatious litigants from filing future state court actions without permission from the court.").

The Court does not lightly impose such pre-filing requirements–it is an extraordinary sanction.  However, extraordinary circumstances are present here. Multiple suits have been filed about fraudulent force-placed insurance by members of the Watkins family and their corporations.  As the Court pointed out in its Order granting summary judgment to the Bank, the plaintiff changes from suit to suit, but the claim remains the same.  (Doc. 86 at 11 & n.11).  Not only are such serial lawsuits inconvenient, harassing, and expensive for the Bank, but they divert judicial resources away from good-faith litigants and meritorious cases, delaying resolution of those matters so the Watkins family's claim may be resolved yet again.  *See Procup v. Strickland,* 792 F.2d 1069, 1072 (11th Cir.1986) (en banc ) ("Every lawsuit filed, no matter how frivolous or repetitious, requires the investment of court time, whether the complaint is reviewed initially by a law clerk, a staff attorney, a magistrate, or the judge.").

The Watkins family's past conduct suggests that they intend to continue suing the Bank, no matter how many adverse judgments they receive.  Under the circumstances, decisive action is needed to safeguard the proper and efficient functioning of the judicial system.  *See Miller,* 541 F.3d at 1096 ("Conditions and restrictions on each person's access are necessary to preserve the judicial resource for all other persons."); *Procup,* 792 F.2d at 1073-74 (recognizing that courts bear "responsibility to prevent single litigants from unnecessarily encroaching on the judicial machinery needed by others").

The Bank has requested an injunction against the entire Watkins family and their corporations that would require them to seek leave of Court before filing any new lawsuit against the Bank, enjoining them from re-litigating their claim regarding force-placed insurance, and requiring all of their future pleadings to be accompanied by an affidavit attesting that the claims are novel.  While the Court agrees that an injunction is appropriate, it declines to issue such a broad injunction that goes far beyond the bounds of this case.  *See Riccard*, 307 F.3d at 1295 ("A sanction imposed for a violation of Rule 11 must be 'limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated.'" (quoting Fed. R. Civ. P. 11(c)(4))). Instead, the Court **ORDERS**:

- Geneva and those acting in concert with her are **ENJOINED** from filing against the Bank any lawsuit, action, proceeding, or matter asserting claims arising from allegedly fraudulent force-placed insurance without first seeking leave of the court in which the suit is to be filed;

- In seeking such leave, Geneva, or anyone acting in concert with her, shall provide the court with a copy of this Order and the Order granting summary judgment (Doc. 86) so that the court may determine if the lawsuit, action, proceeding, or matter is barred by res judicata or collateral estoppel;
- Attorney's fees are awarded in the amount of $19,488.32.

**SO ORDERED,** this 11th day of April, 2016.

S/ Marc T. Treadwell
MARC T. TREADWELL
UNITED STATES DISTRICT COURT
